## Walls et al. v. Graham et al.

*Equity—Plan of lots—Dedication — Public use — Streets — Coal mines— Rights of purchasers—Abutting owners—Good faith.*

Where a land company that had laid out and sold a plan of lots had given defendants permission to mine coal under the street and adjoining lots, by doing which cracks and cave-ins resulted, defendants were restrained from said mining at the instance of the abutting property owners, on the ground that the land company had no right as a matter of good faith to do anything that would interfere with the rights of the purchasers in the use of their lots or the streets in the plan dedicated to public use.

Bill in equity for injunction. C. P. Allegheny Co., April T., 1921, No. 1525.

L. K. & S. G. Porter for plaintiffs; F. J. Tyrrell, for defendants.

DOUGLASS, J., Jan. 30, 1923.—This is a bill in equity to restrain defendants from so conducting mining operations as to cause the surface of Shady Lane, Mifflin Township, this county, to become cracked and in all probability result in a condition which would be dangerous to public travel.

From the pleadings and testimony we find the following

### Findings of fact.

1. The plaintiffs are the owners in fee of certain ground, situate in Mifflin Township, Allegheny County, known as lots 15, 16, 17, 18, 19, 20, 21, 23, 25, 26 and 65 in the Kennyview Place plan of lots, as recorded in the Recorder's

Office of Allegheny County, vol. 24, pages 20 and 21, in which said lots, with one exception, abutted on Shady Lane.

2. Shady Lane was dedicated to the public use by the original owners of the plot at the time the plan was laid out.

3. The respondents, Thomas Graham and Frank Rusnik, are partners, trading under the firm name of Graham & Rusnik, engaged in the business of mining and selling coal and operating a coal mine under part of Kennyview Place plan of lots.

4. That Shady Lane has been used by the lot owners in the plan and the general public, intermittently, for a great many years, and there is evidence of vehicular travel along the roadway.

5. That in the operation of their mine respondents have removed coal from under the land immediately adjacent, and also under Shady Lane, and have removed the support for the surface where they have removed the coal.

6. That, as a result of said mining, cracks have appeared in the surface of Shady Lane, and make Shady Lane dangerous for public travel.

7. That the respondents admitted, upon the stand, that the only right they had to remove the coal under Shady Lane was by permit given to them by Mr. Kuhn, President of the Kennyview Land Company, and that, further, it was their intention to continue their mining operations, both as to the removing of coal from under the land immediately adjacent to Shady Lane and from under Shady Lane itself.

8. A few cave-ins have occurred in the surface of Shady Lane, and from the testimony it appears that some of these cave-ins have occurred since Graham & Rusnik commenced their mining operations.

### Conclusions of law.

1. The plaintiffs in this case, being lot owners in the Kennyview Place plan, are entitled to the full, free and unrestricted use of Shady Lane.

2. The Kennyview Land Company, having by its recorded plan, recorded in Recorder's Office of Allegheny County, dedicated Shady Lane to public travel, and having sold lots abutting upon said Shady Lane, the said land company cannot now destroy the street for public use in contravention to those who purchased lots upon said street.

3. That Shady Lane is entitled to such support as will keep it in place, both laterally and vertically, and the coal cannot be removed from under said street in such a manner as would cause a subsidence in the surface thereof to the detriment of the public use.

4. That the preliminary injunction heretofore granted in this case should be made permanent and the costs of this proceeding paid by the defendants.

5. That a decree should be drawn to that effect.

### Discussion.

This is a bill in equity for an injunction, praying the court to restrain the defendants from so conducting their mining operations as to cause the surface of Shady Lane to become cracked and in all probability result in a condition which would be dangerous for public travel.

From the evidence it appears that the defendants are copartners, engaged in the mining of coal, and in the carrying on of their work they secured from a Mr. Kuhn, who was the president of the Kennyview Land Company, permission to mine coal then remaining under Shady Lane. They also had by some sort of grant the right to mine the coal underlying the property immediately adjacent to Shady Lane, directly opposite to land of the plaintiffs.

3 D. & C.

They were restrained by a preliminary injunction from continuing the mining operations when it appeared that cracks were showing in the surface thereof.

The Kennyview Land Company sold these lots abutting on Shady Lane, and the purchasers thereof took them in good faith that the street, known as Shady Lane, and which was part of the plan when originally recorded, would not in any way be interfered with, and particularly would they have the right to rely upon that as against anything that the land company itself might do. It might, of course, become necessary for the benefit of the general public for the municipality or township to make some change upon the street, and, of course, in that event, the rights of the individual might have to give way to the paramount right of the general public good, but the individual would at least, even under those circumstances, have to be compensated for any damage he would sustain thereby.

The land company has no right whatsoever to do some act that would ruin Shady Lane for public travel, for the reason that when they sold lots in this plan, the purchasers had the right to expect that they would have the full, free and uninterrupted use of all the streets in the plan, and that was in all probability one of the controlling inducements which would cause them to buy.

The injunction in this case should be continued simply for the protection of the traveling public and the abutting owners who find it necessary to use Shady Lane.

From Edwin L. Mattern, Pittsburgh, Pa.